IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BENJAMIN MUHAMMAD JONES                                              PLAINTIFF

v.                            No. 5:16-cv-00191 JM-PSH

DANNY BURL, *et al.*                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Benjamin Muhammad Jones, an inmate in the custody of the Arkansas Department of Correction ("ADC"), filed this *pro se* civil rights complaint alleging that certain defendants failed to protect him from a May 17, 2016 assault by another inmate. *See* Doc. No. 1.[1] Jones'

---

[1] Jones has filed multiple amended complaints. After filing his initial complaint, he filed an amended complaint (Doc. No. 5), and two addendums (Doc. Nos. 7 & 8). On August 9, 2016, the Court entered an order noting Jones' complaint appeared to advance multiple claims, and was too vague to determine if he stated a claim for relief against each defendant (Doc. No. 18). That order also directed Jones to file an amended complaint. Since that order's entry, Jones filed three amended complaints (Doc. Nos. 33, 35, & 41).

claims against other defendants were later dismissed from this lawsuit. *See* Doc. Nos. 72 & 94. Additionally, two defendants were awarded summary judgment because Jones failed to exhaust his administrative remedies with respect to his claims against them. *See* Doc. Nos. 168 & 173. The remaining defendants are Danny Burl, Sterling Kirk, Ruthie Jones, Xavier Cuclager, Gregory Newsom, and LaToya Johnson (the "Defendants"). Jones sues Defendants in both their individual and official capacities, and seeks both monetary and injunctive relief. *See* Doc. No. 35.

Before the Court is a motion for summary judgment filed by Jones (Doc. No. 172); Defendants' response (Doc. No. 175); and Jones' objection to Defendants' response (Doc. No. 178). Also before the Court is Defendants' motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 201-203); Jones' objection to a declaration (Doc. No. 211); and Jones' response (Doc. No. 212). For the reasons stated herein, the Court finds there are no genuine issues of material fact for trial, and Defendants are entitled to summary judgment as a matter of law.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by

sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

Jones was attacked by inmate Robert Joe White on May 17, 2016. The other undisputed facts listed below were submitted by Defendants and are supported by the following documents attached to Defendants' statement of undisputed facts: Jones' status assignment sheet (Doc. No. 203-1); Declaration of Felicia A. Bentley (Doc. No. 203-2); Declaration of Ronald Watson (Doc. No. 205[2]); a memorandum from Lieutenant Maple Adkins, B-Shift Supervisor, to Major Carl Stout, Chief of Security, regarding the May 17, 2016 attack with incident reports and an enemy alert notification attached (Doc. No. 203-4).

1. On March 9, 2016, Plaintiff Benjamin Jones was transferred from cellblock 7 to cellblock 4 (cell 1) at the Maximum Security Unit. Doc. No. 203-1.

2. On April 26, 2016, Jones was assigned to cell 7 in cellblock 4. *Id.*

3. The cellblock consists of three tiers. Each tier consists of 18 cells. Doc. No. 203-2.

4. Cell 7 is located on the bottom tier of the cellblock. *Id.*

---

[2] An unsigned declaration by Watson was initially filed as Doc. No. 203-3, but was replaced with a signed version at Doc. No. 205.

<mark>3</mark>

5. As of May 17, 2016, inmate White was also housed in cellblock 7. Doc. No. 35 at 6.

6. Inmate White was housed in cell 12. *Id.*

7. Prior to May 17, 2016, Jones had not complained to staff regarding any threats made by inmate White. Doc. No. 205.

8. Corporal Ruthie Jones was assigned to the control booth which monitors cellblock 4. Doc. No. 35 at 9.

9. Security checks are performed every 30 minutes in each of the cellblocks. Doc. No. 203-2.

10. Policy requires that staff supervise inmates inside the housing areas. This does not mean that an officer must be physically present inside the cellblock. *Id.*

11. An officer posted inside the control booth can see into a cellblock, thus providing supervision. *Id.*

12. Officers are in and out of cellblocks throughout each shift. *Id.*

13. Inmates are allowed out of their cells during certain designated times of the day. *Id.*

14. The cellblocks are divided into halves for purposes of allowing inmates out of their cells for recreation and activities. The first half of a cellblock consists of cells 1 through 27. The second half consists of cells 28 through 54. *Id.*

15. During the time in which inmates are allowed out of their cells, they are free to move about the main floor of the cellblock. They are allowed to shower, watch television, and converse with other inmates who are also participating in out-of-cell time. *Id.*

16. The cell doors remain open during this time. *Id.*

17. Jones' cell and inmate White's cell were on the same tier, which was tier 1; therefore, their cell doors would have been open at the same time. *Id.*

18. Both inmates would have been allowed to move freely on the main floor during this designated time period. *Id.*

19. Jones alleges he was writing letters to Lieutenant Ronald Watson to report certain activities inside cellblock 4. Doc. No. 35 at 7-8.

20. Jones believes he was assaulted because of those letters. *Id.*

21. Lt. Watson states he has never asked inmate Jones to report to him or "snitch" regarding the activities inside cellblock 4. Doc. No. 205.

22. After inmate Jones claimed that he had written letters to Lt. Watson and that someone had retrieved them from the mail receptacle inside cellblock 4, Lt. Watson went back and looked for the letters. *Id.*

23. Lt. Watson did not find them. *Id.*

24. Lt. Watson also reviewed the video surveillance footage to see if he could see anyone going to the mailbox and removing anything, but the video did not show that had occurred. *Id.*

25. The mailboxes inside the cellblocks are locked. Only an officer with a key can retrieve the mail inside them. Doc. No. 203-2.

26. After the May 17, 2016 attack, Jones was moved to cellblock 6 and placed on administrative confinement for his safety. Doc. No. 203-1.

27. Jones did not know the name of the inmate who assaulted him. Doc. No. 203-4.

28. An investigation was initiated immediately. *Id.*

29. Staff reviewed the security footage and determined it was inmate White who had assaulted Jones. *Id.*

30. Inmate White was the only inmate seen going into and coming out of Jones' cell. *Id.*

31. Jones and inmate White were immediately placed on each other's enemy alert lists. *Id.*

32. Two other inmates were believed to have been involved in the incident, although neither of them personally participated in the physical assault. *Id.*

33. That same day, Jones submitted an informal grievance. Doc. No. 35 at 18.

34. In the grievance, Jones alleged officers Newsom, Johnson, Kirk, and Culclager had all abandoned their assigned posts when they called last chow for 4 barracks. *Id*.

35. Sergeant Nelson responded to the grievance the following day, and informed Jones that the incident was under investigation. *Id*.

36. Jones proceeded to Step Two of the grievance procedure, and submitted the grievance as Grievance No. MX-16-1241. *Id*. at 19.

37. Warden Burl responded to Grievance MX-16-1241 on May 24, 2016. He informed Jones that the matter was investigated and documented. Burl informed Jones that all staff had responded and acted according to policy, and that he found no evidence of staff misconduct. *Id*.

38. Jones appealed the warden's response to his grievance on May 25, 2016. He alleged there was no staff inside cellblock 4 when the doors were opened for last chow call. *Id.*

39. Staff was in the doorway and immediately outside the door performing security pat searches on the inmates leaving the cellblock. Doc. No. 205.

40. The control booth officer was still in the control booth providing supervision. Doc. No. 205.

Jones does not clearly identify which facts he disputes in his response. *See* Doc. No. 212. He filed a separate objection to Lieutenant Watson's declaration and states that an officer was not present on the floor of the cellblock when he was attacked. Doc. No. 211. Jones accuses Defendants of withholding evidence and falsifying documents. Doc. No. 212 at 4. Jones continues to assert that someone intercepted his letters but provides no evidence to support that contention. *Id.* at 5. Jones states that Defendants had knowledge of an attack by inmate Africa Murray on April 9, 2016 that he defused, which made him a target. *Id.* at 6. Jones also asserts that he was released back to cellblock 4 after he was caught with a knife and an illegal cell phone on April 26, 2016, indicating the failure to discipline him made him a target. *Id.* Finally, Jones generally alleges a cover-up by the ADC. *Id.* at 7. Jones also attached to his response what appear to be a witness list, interrogatories (or answers to interrogatories), a number of unrelated grievances, and several affidavits in which he attests to the contentions made in his response. The Court finds Jones' assertions are insufficient to create a genuine dispute regarding the facts submitted by Defendants.

### IV. Analysis

Jones asserts his constitutional rights were violated because he was attacked by another inmate in cellblock 4. Specifically, Jones maintains that officers were not on the floor of the cellblock as they should have been per ADC policy. Doc. No. 35 at 6. Jones further maintains that Defendant Burl's response to his grievance showed deliberate indifference to his safety in that Burl found no misconduct on behalf of the officers on duty. *Id.* at 10. Jones also claims that Lt.

Watson asked him to inform on other inmates regarding conditions in the cellblock, and that this is what caused him to become a target. *Id.* at 7-8.

A.  **Legal Standard: Failure-to-Protect**

An inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). A correctional officer is liable for failing to protect an inmate if the inmate can make the following two-part showing:

> A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016). The Eighth Circuit Court of Appeals has repeatedly recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1151; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

B.  **Plaintiff's Motion for Summary Judgment**

The Court interprets Jones' motion for summary judgment as making the following claims: that he was transferred to the East Arkansas Regional Unit for using the grievance process in good faith; that he should have been locked up for assisting a sergeant on April 9, 2016, when she was attacked by inmate Africa Murray; and that a hit was put on him after he helped Lieutenant Ron Watson, Burl, Sergeant Penister, and Dexter Payne on April 26, 2016. He references Grievance

MX16-00961 to support this claim but does not attach a copy. Jones indicates he should have been disciplined for having a knife but was not and this made him a target. Jones attaches portions of various grievances, all of which are dated in 2017. It appears Jones is attempting to argue that the Defendants should have known he would be labeled a snitch and become a target based on the incidents that occurred on April 9 and April 26. Even if that were true, it does not show that any of the Defendants knew there was a substantial risk that Jones would be attacked as he was, or that Defendants were deliberately indifferent to such a risk. Jones' motion for summary judgment should be denied.

  **C. Defendants' Motion for Summary Judgment**

  Defendants contend they are entitled to sovereign immunity with respect to Jones' official capacity claims and qualified immunity with respect to Jones' individual capacity claims.

  *Sovereign Immunity.* Defendants correctly assert that Jones' monetary claims against them in their official capacities are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Likewise, summary judgment should be granted in favor of Defendants with respect to Jones' claim for injunctive relief because Jones is no longer incarcerated at the Maximum Security Unit where he was attacked and he does not allege ongoing risk of harm. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted and Jones' official capacity claims be dismissed.

  *Qualified Immunity.* Defendants argue they are entitled to qualified immunity with respect to Jones' individual capacity claims. Qualified immunity protects government officials from

liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Jones fails to establish a violation of his constitutional rights. To prevail on a failure-to-protect claim, Jones must show that Defendants were aware that Jones faced a substantial risk of harm, and were deliberately indifferent to that risk. The undisputed facts show that the attack on Jones was a surprise attack. Jones does not dispute that he did not know his attacker's name and that prior to the attack on May 17, 2016, he had not complained to staff regarding any threats by White. Jones submits no proof to counter the evidence provided by Defendants on this point. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

10

There are simply no facts to show that any Defendant had specific knowledge that White was likely to attack Jones.

Additionally, there is no evidence to support Jones' contention that the Defendants knew he was a target based on the April 9 or April 26 incidents he describes. Jones submitted one grievance dated April 24, 2016 (which is not numbered) which appears to reference the incident concerning inmate Africa Murray but makes no reference to Jones' fear of being made a target as a result. *See* Doc. No. 8-1 at 20. He also attached an affidavit he executed stating that some inmates said some prison officers were trying to have him killed or make him kill based on the incident involving Africa Murray. *See id.* at 26. However, it is not at all clear whether any of the Defendants saw this affidavit, and even if they did, it does not describe a threat by inmate White or other inmates. Further, even accepting Jones' contention that he wrote letters to Lt. Watson informing on other inmates, there is no evidence or even an allegation that any of the Defendants knew of such intercepted letters. The Court finds that Jones' unsupported allegations that he was a target of other inmates are insufficient to create a genuine dispute regarding a material fact.

Additionally, Jones has not shown that the attack occurred because the cellblock was not appropriately staffed. The declarations provided by Defendants state that the cellblocks were appropriately supervised (*see* Doc. Nos. 203-1 & 205), and Jones provides no evidence to contradict those statements. Jones also has not shown that Defendants were deliberately indifferent to a risk of attack based on inadequate staffing because Jones provides no evidence that prison officials were aware of this issue before his attack. Without such a showing, Jones does not state a constitutional claim even if he could show that the ADC's staffing policy was violated on the day in question. Violation of a prison policy alone does not give rise to a constitutional

violation. *See Moore v. Rowley,* 126 F. App'x 759, 760 (8th Cir. 2005) (citing *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

Finally, to the extent Jones argues that Defendant Burl was deliberately indifferent to a substantial risk based on inadequate staffing, Jones fails to state a constitutional claim. The grievance Jones filed complaining about inadequate staffing on the cellblock floor was filed after he was attacked. Further, Burl's participation in the administrative grievance procedure alone is insufficient to establish liability under § 1983. *See Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006). Jones also fails to state a claim against Burl in his supervisory role as warden. Jones does not allege that Burl was present during the attack or in any way responsible for the attack. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To establish liability against a defendant in a supervisory role, an inmate must prove that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts. *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

For these reasons, Defendants are entitled to qualified immunity with respect to Jones' individual capacity claims and should be awarded summary judgment.

## IV. Conclusion

The undersigned recommends that Defendants' motion for summary judgment be granted. Jones' official capacity claims are subject to dismissal, and the undisputed material facts show that Defendants were not aware of a substantial risk to Jones and therefore were not deliberately indifferent to such a risk. Accordingly, Defendants are entitled to qualified immunity on Jones' individual capacity claims.

IT IS THEREFORE RECOMMENDED THAT:

1. Jones' motion for summary judgment (Doc. No. 172) be DENIED.

2. Defendants' motion for summary judgment (Doc. No. 201) be GRANTED, and Jones' claims against them be DISMISSED WITH PREJUDICE.

3. The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 12th day of December, 2017.

_____
UNITED STATES MAGISTRATE JUDGE